IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
Aug 26 2026
U.S. DISTRICT COURT
Northern District of WV

THE CINCINNATI INSURANCE COMPANY,
an Ohio corporation,

Plaintiff,

v. Civil Action No. 1:26-CV-111 (Kleeh)

CLASSIC ANTIQUES & PRIMITIVES,
a West Virginia Company,

Defendant.

---

THE CINCINNATI INSURANCE
COMPANY'S COMPLAINT FOR DECLARATORY RELIEF

---

Plaintiff, The Cincinnati Insurance Company (hereinafter referred to as "Cincinnati"), by its undersigned counsel, Trevor K. Taylor, Taylor Law Office, files this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201, et seq., and Rules 18 and 57 of the Federal Rules of Civil Procedure to seek a declaration regarding recission of its policy and its rights and obligations with respect to a commercial property insurance policy issued to Classic Antiques & Primitives, (hereinafter referred to as "Classic Antiques"). Federal Jurisdiction is appropriate under 28 U.S.C. §§ 1332 and/or 1367.

**JURISDICTION AND VENUE**

1. Plaintiff, Cincinnati, is incorporated under the laws of the State of Ohio with its principle place of business located in Fairfield, Ohio. Cincinnati is authorized to offer insurance for sale in the State of West Virginia and is actively engaged in the insurance business in the State of West Virginia.

2. Upon information and belief, Classic Antiques was a company formed and situated in Marion County, West Virginia, the policy at issue was sold in Marion County, West Virginia, and the property at issue where Classic Antiques was to operate was located in Marion County, West Virginia.

3. Subject matter jurisdiction for this action is based upon 28 U.S.C §1332 because there exists complete diversity of citizenship between Plaintiff and Defendant and because the amount in controversy (the policy limits listed and demanded on the policy) exceeds $75,000, exclusive of interest and costs.

4. Subject matter jurisdiction may also be based upon 28 U.S.C. § 1367 and this Court's supplemental jurisdiction.

5. Venue for this action is appropriate in this District based upon 28 U.S.C. § 1391.

**FACTS**

6. On February 26, 2026, a fire loss occurred at 26 Pennsylvania Avenue, Fairmont, West Virginia (hereinafter "the loss location.") The fire occurred at a vacant building owned by Mike Zemonick. Mr. Zemonick purchased this building for his business he was going to conduct at the loss location under the name Classic Antiques. The loss location was purchased on June 12, 2024, when Mr. Zemonick paid $60,000 for the vacant building.

7. Prior to the purchase, Mr. Zemonick contacted Bond Insurance Agency to obtain insurance for the Pennsylvania Avenue loss location. Mr. Zemonick spoke with an agent with Bond Insurance and provided information that was needed for the application process.

8. As part of the application process, Mr. Zemonick was asked about prior losses. On the application, Mr. Zemonick reported no prior losses. Specifically, on page four of the Commercial Insurance Application – Applicant Information Section, under "Loss History," there

is a box checked with an "X." The "X" represents where an applicant is to check if there are no prior losses. (See Ex 1 – Commercial Insurance Application – Applicant Information Section).

9. Mr. Zemonick signed and dated the policy application on June 5, 2024. The signature on the application verified that Mr. Zemonick was being honest and giving accurate information. Specifically, on page four of the application – which was the same page where he verified no prior losses with an "X" – Mr. Zemonick signed under language contained in the application that stated:

> THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONBLE INQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

10. Based upon the information provided in the application, Cincinnati issued policy number EPP0718152. (See Exhibit 2 – Policy No. EPP0718152). As part of this policy, Cincinnati insured the building for 1.9 million dollars and the business personal property for 2.1 million dollars. It is from these policy limits that Mr. Zemonick has demanded payment of 1.9 million dollars for the building and over $1.1 million for business personal property.

11. As part of the investigation after the fire loss, Cincinnati discovered that Mr. Zemonick made material misrepresentations about prior losses. During an examination under oath conducted with Mr. Zemonick on June 4, 2026, Mr. Zemonick admitted that he did not report prior losses that should have been listed on the application.

12. Specifically, Mr. Zemonick admitted that he experienced a prior fire loss "in the early 2000's" at a home he owned. This fire resulted in property damage, but was not a total loss. The claim was reported to Mr. Zemonick's then-insurer (not Cincinnati) and he was paid an estimated $15,000 for the needed repairs.

13. Additionally, Mr. Zemonick admitted that he experienced another loss in 2013 that involved a building where he conducted business. This fire loss resulted in damage that ruined the premises and was deemed to be a total loss. Mr. Zemonick reported this loss to his insurer at the time (not Cincinnati) and he was paid over $800,000.

14. Mr. Zemonick admitted during his EUO on June 4, 2026, that the two prior fire losses would be material information for an insurer to consider as part of the application process and by not including this information on the application, the application was not accurate.

15. Had Mr. Zemonick provided accurate information about his prior losses, Cincinnati would not have issued the policy at issue for Classic Antiques.

16. West Virginia Code § 33-6-7 provides:

> All Statements and descriptions in any application for an insurance policy or in negotiations therefore, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts, and incorrect statements shall not prevent a recovery under the policy unless:
>
> (a) Fraudulent; or
>
> (b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

17. Accordingly, an insurer may properly rescind a policy based upon (1) an application containing intentional or unintentional errors or omissions; (2) an application containing an error or omission, even if unintentional, that is material to the risk; or (3) an application containing an error or omission, even if unintentional, that had it been known, the insurer would not have issued the policy under the same or any terms.

18. Pursuant to the terms of the insurance policy:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**(INCLUDING SPECIAL CAUSES OF LOSS)**

(FM 101 05 16)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION

G. DEFINITIONS.

SECTION A. COVERAGE

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any

Covered Cause of Loss.

1. Covered Property

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

a. Building

Building, means the building or structure described in the Declarations, including:

* * * * * * * * * * * * * * * * * *

d. Business Personal Property

Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater. Your Business Personal Property consists of the following unless otherwise specified in the Declarations or on the BUSINESS PERSONAL PROPERTY - SEPARATION OF COVERAGE ENDORSEMENT.

(1) Furniture;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) The cost of labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

* * * * * * * * * * * * * * * * * *

3. Covered Causes of Loss

a. Covered Causes of Loss

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

b. Exclusions

(1) We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

* * * * * * * * * * * * * * * * * *

(h) Dishonest or Criminal Acts

Dishonest or criminal acts (including theft) by you, any of your partners, members (if a limited liability company), officers, managers, employees (including leased workers or temporary employees) directors, trustees, or authorized representatives; whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property

for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during the hours of operation. This Dishonest or Criminal Acts exclusion does not apply to acts of destruction by your employees (including leased workers or temporary employees) or by authorized representatives; except theft by employees (including leased workers or temporary employees) is not covered.

* * * * * * * * * * * * * * * * * *

SECTION D. LOSS CONDITIONS

The following conditions apply in addition to the COMMON POLICY CONDITIONS and the COMMERCIAL PROPERTY CONDITIONS.

* * * * * * * * * * * * * * * * * *

3. Duties in the Event of Loss or Damage

a. In the event of "loss" to Covered Property, you must see that the following are done in order for coverage to apply:

* * * * * * * * * * * * * * * * * *

5. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

* * * * * * * * * * * * * * * * * *

8. Cooperate with us in the investigation of settlement of the claim.

* * * * * * * * * * * * * * * * * *

6. Vacancy

a. Description of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

(a) When this Coverage Part is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this Coverage Part is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

1) Rented to a lessee or sublessee and used by them to conduct their customary operations; or

2) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovations are not considered vacant.

b. Vacancy Provisions

If the building where direct "loss" occurs has been vacant for more than 60 consecutive days before that "loss", we will:

(1) Not pay for any "loss" caused by any of the following, even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) Reduce the amount we would otherwise pay for the "loss" by 15% with respect to Covered Causes of Loss other than those listed in b.(1)(a) through b.(1)(f) of this Loss Condition.

* * * * * * * * * * * * * * * * * *

SECTION G. DEFINITIONS

* * * * * * * * * * * * * * * * * *

8. "Loss" means accidental physical loss or accidental physical damage.

* * * * * * * * * * * * * * * * * *

10. "Operations"means:

a. Your business activities occurring at the "premises"; and

b. The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

* * * * * * * * * * * * * * * * * *

13. “Premises” means the Locations and Buildings described in the Declarations.

* * * * * * * * * * * * * * * * * *

**COMMERCIAL PROPERTY CONDITIONS**

(FA 450 05 16)

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

A. Concealment, Misrepresentation or Fraud

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

* * * * * * * * * * * * * * * * * *

**AMENDED LOSS VALUATION – “STOCK”**

(FA 429 04 04)

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITION, 7. Valuation, c.** is deleted in its entirety and replaced with the following:

c. “Stock”

(1) You have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

(2) You have not sold at the lesser of:

(a) Your original acquisition cost plus the cost of any labor, materials, or services furnished or arranged by you on that property, or

(b) The cost to repair or replace the lost or damaged property with property that is of comparable material and quality and is used for the same purpose as the lost or damaged property.

* * * * * * * * * * * * * * * * * *

19. Accordingly, by letter dated August 14, 2026, based upon Mr. Zemonick's material misrepresentations in his 2024 insurance application, Cincinnati properly rescinded the policy issued to Classic Antiques and refunded the premium paid by Mr. Zemonick in the amount of $41,314.

**COUNT I – RECISSION**

20. Cincinnati reasserts by reference the statements and allegations contained in Paragraphs 1 through 19.

21. Mr. Zemonick, as the applicant, made misrepresentations about prior losses as part of the 2024 application – misrepresentations that Cincinnati reasonably relied upon in writing the policy for Classic Antiques in 2024. These misrepresentations were to Cincinnati's detriment which warrants rescission of the policy issued to Classic Antiques and a declaration that the policy issued to Classic Antiques is void *ab initio*.

22. The 2024 application for Classic Antiques contained misrepresentations, omissions, concealments of fact, and or incorrect statements that were material to the acceptance of the risk or to the hazard assumed by Cincinnati in issuing the policy to Classic Antiques which warrants rescission of Classic Antiques' policy and a declaration that the policy is void *ab initio.*

23. Cincinnati, in good faith, would not have issued the policy to Classic Antiques had Cincinnati been provided accurate information and true facts associated with prior losses by the applicant, Mr. Zemonick. Instead, Cincinnati relied upon incorrect information from Mr. Zemonick, which represents material misrepresentations that warrant rescission of Classic Antiques' policy and a declaration that the policy is void *ab initio*.

**COUNT II – DECLARATORY RELIEF – MATERIAL MISREPRESENTATIONS**

24. Cincinnati reasserts by reference the statements and allegations contained in Paragraphs 1 through 23.

25. Pursuant to West Virginia Code § 33-6-7, the misrepresentations about prior losses in the application for Classic Antiques were material to the acceptance of the risk and to the hazard assumed by Cincinnati.

26. Pursuant to West Virginia Code § 33-6-7, Cincinnati, in good faith, would not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to Cincinnati as required by the application for the policy.

27. Pursuant to the language in the policy, the policy is void in any case of fraud by the insured as it relates to coverage at any time. It is also void if the insured, at any time, intentionally conceals or misrepresents a material fact concerning the policy.

28. Cincinnati seeks a declaratory judgment against Classic Antiques that: (1) Cincinnati is not required under the subject policy to indemnify or compensate Classic Antiques or Mr. Zemonick for a fire loss that occurred on February 26, 2026; (2) that material misrepresentations were made as part of the application process when it was not disclosed that there had been two prior losses by the applicant; (3) that Cincinnati reasonably relied upon the

inaccurate information in the application as a reasonably prudent insurer would regarding the lack of prior losses; (4) that the misrepresentations about no prior losses, whether intentional or innocent, impacted Cincinnati's business judgment utilized in issuing the policy; (5) that a reasonably prudent insurer would consider misrepresentations about the lack of prior losses by an applicant to be material to the formation of this policy; and (6) that the misrepresentations by the applicant were material to the acceptance of the risk insured and the hazard assumed by Cincinnati.

**COUNT III – DECLARATORY RELIEF – VACANCY**

29. Cincinnati reasserts by reference the statements and allegations contained in Paragraphs 1 through 28.

30. In the alternative that the Court were to find recission was not proper in this case, alternatively Cincinnati asks that the Court declare that the policy limits owed under the building and business personal property be reduced in accordance with the Vacancy terms of the policy.

31. Under the terms of the policy, a building is vacant unless at least 31% of its total square footage is used by the building owner to conduct customary operations.

32. Under the terms of the policy, if a building where a loss occurs has been vacant for more than 60 consecutive days before that loss, Cincinnati is permitted to reduce the amount Cincinnati would otherwise owe for the loss by 15%.

33. The building where Classic Antiques was to operate was vacant because Classic Antiques never conducted customary operations for the business prior to the loss.

34. Should recission not be deemed proper, Cincinnati is entitled to reduce payments owed under the policy by 15%.

## COUNT IV – DECLARATORY RELIEF – STOCK

35. Cincinnati reasserts by reference the statements and allegations contained in Paragraphs 1 through 34.

36. In the alternative that the Court were to find recission was not proper in this case, alternatively Cincinnati asks that the Court declare that the coverage for business personal property be confined to the "Stock" endorsement.

37. Pursuant to the terms of the policy, "Stock" includes merchandise held in storage or for sale.

38. The items that Classic Antiques stored at the loss location was "Stock."

39. Pursuant to the terms of the "Stock" endorsement, Cincinnati is to pay the original acquisition cost, plus any labor, materials, or services furnished or arranged by the insured on that property.

40. To date, Classic Antiques has not identified the original acquisition cost incurred for the "Stock" at the loss location.

41. To date, Classic Antiques has not identified any labor, materials, or services furnished or arranged at the loss location.

42. Should recission not be deemed proper, Cincinnati is only required to pay the acquisition costs incurred for "Stock" at the loss location.

43. Under the terms of the policy, an insured is required to cooperate with Cincinnati as part of the investigation of a loss.

44. To date, Classic Antiques has failed to cooperate insofar as needed information is required for the acquisition cost for "Stock" at the loss location.

45. To date, Classic Antiques has failed to demonstrate that the "Stock" was purchased by Classic Antiques for business operated at the loss location by Classic Antiques.

46. Should recission not be deemed proper, non-cooperation by Classic Antiques has prejudiced Cincinnati's ability to investigate the business personal property claim submitted by Classic Antiques.

**Relief Requested**

WHEREFORE, Cincinnati requests that the Court declare that:

1. That the policy issued to Classic Antiques was procured by an application with material misrepresentations and as permitted under West Virginia Code § 33-6-7 the policy is lawfully subject to recission;
2. The Commercial Property Insurance Policy issued by Cincinnati, as properly rescinded, provides no coverage for, and is not applicable to, a fire loss that occurred on February 26, 2026;
3. As the policy has been rescinded, and the policy premiums refunded, Cincinnati has no duty to insure Classic Antiques;
4. Should the Court find that recission was improper, then Cincinnati alternatively would be permitted to reduce what is owed under the building and personal property coverage by 15% pursuant to the vacancy provisions in the policy;
5. Should the Court find that recission was improper, then Cincinnati alternatively would be required to pay only the acquisition cost for "Stock" after the same in demonstrated by Classic Antiques for Classic Antiques' "Stock"; and
6. Cincinnati is entitled to such further and additional relief as the Court deems just and proper.

THE CINCINNATI INSURANCE COMPANY,

By Counsel.

/s/ Trevor K. Taylor
Trevor K. Taylor, Esquire
W.Va. State Bar I.D. #8862
TAYLOR LAW OFFICE
330 Scott Ave., Suite 3
Morgantown, WV 26508
(304) 225-8529